UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TIMOTHY RAY RICHARDSON,<br><br>    Plaintiff,<br><br>vs.<br><br>FLUOR CORPORATION; FLUOR MAINTENANCE SERVICES, INC.; DOES 1 THROUGH 10, INCLUSIVE,<br><br>    Defendants. | Case No: C 13-1908 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>Docket 40 |

    Plaintiff Timothy Ray Richardson brings the instant disability discrimination action against his former employer, Fluor Maintenance Services, Inc. ("Fluor"), and related entity Fluor Corporation (collectively "Defendants"). Among other things, Plaintiff alleges that Defendants failed to accommodate his claustrophobia and improperly terminated his employment in violation of the Americans with Disabilities Act of 1990 ("ADA") and the California Fair Employment and Housing Act ("FEHA").

    The parties are presently before the Court on Plaintiff's Motion for Leave to Amend First Amended Complaint. Dkt. 46. Plaintiff seeks to add a retaliation claim under the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851, which recently has been administratively exhausted. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion in part and DENIES it in part, for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I. BACKGROUND

## A. FACTUAL SUMMARY

Plaintiff is an ironworker who suffers from claustrophobia. First Am. Compl. ("FAC") ¶ 1, Dkt. 11. In February 2012, Fluor hired Plaintiff to work at the Humboldt Bay Nuclear Power Plant in Eureka, California. Id. ¶ 20. While undergoing training, Plaintiff repeatedly informed Fluor management that he suffers from claustrophobia and is unable to work in confined spaces. Id. ¶ 24. Despite being on notice of Plaintiff's condition, Fluor ordered him to work in a 4' x 4' tunnel which contained a radioactive contaminated pipe. Id. ¶ 27. Plaintiff donned a contamination suit, hood, mask and respirator and was about to enter the tunnel when he suffered an anxiety attack. Id. He waited several minutes and attempted to enter the tunnel a second time, but suffered a more severe attack. Id. ¶ 28. As a result of the incident, other workers refused to work with Plaintiff out of fear that he posed a danger to them. Id. ¶ 30.

Shortly after the tunnel incident, Plaintiff observed Edgar Ray Roden ("Roden"), a union "bull steward," working in an unsafe manner while removing a radioactive pipe. Id. ¶ 32. According to Plaintiff, Roden "had a reputation among the workers on the job site as being reckless, careless, and dangerous in how he performed his work and instructed others to do their work." Id. ¶ 31. Although other employees had complained repeatedly about Roden to Fluor supervisor David LaBouef, nothing was done. Id. ¶ 35. At an impromptu meeting with employees held in "Trailer 35,"[1] LaBoeuf told the workers that he was upset that they were "going over his head" to complain about Roden, and that he was doing his best to protect the complaining workers. Id. ¶ 36. After his comments were met with disapproval, LaBouef responded: "Keep it up, and you'll all be out of work." Id. ¶ 36. Employee complaints regarding Roden continued, of which Roden and LaBoeuf were later apprised. Id. ¶¶ 37-40.

---

[1] Trailer 35 refers to a trailer which served as a break and meeting room for workers, and contained LaBoeuf and other management personnel's offices. FAC ¶ 36; SAC ¶ 83.

At a subsequent employee meeting called by Ray Trujillo ("Trujillo") of the International Building Trades union, Trujillo repeated LaBoeuf's statement from a few days earlier, i.e., "Stop complaining about Roden's unsafe practices, or risk losing your job." Id. ¶ 40. Several workers, including Plaintiff and Doug Wilmes ("Wilmes"), complained about Roden's dangerous conduct and opined that he should step down as bull steward. Id. ¶ 41. Roden was present, and remarked to others that Plaintiff's comment was going "to cost [Plaintiff] his job." Id. ¶ 42.

On April 13, 2012, Roden summoned Plaintiff to meet with LaBoeuf. Id. ¶ 43. Plaintiff asked Roden to accompany him to the meeting (as he was required to do as a union representative), but he refused. Id. Plaintiff appeared alone in LaBoeuf's office and was informed that he was being laid off due to his purported inability to work with others. Id. Plaintiff inquired whether LaBouef was referring to his claustrophobia—to which LaBoeuf responded, "Yes." Id. LaBoeuf then met with Wilmes and was informed that he was being laid off due to "budget cuts." Id.

As Plaintiff was leaving LaBoeuf's office, he observed a training session in progress. Id. ¶ 45. The trainer stated that if anyone suffered from claustrophobia, they would not be required to work in confined spaces as there was other work available. Id. No such alternative work, however, had been offered to Plaintiff. Id.

B.  **PROCEDURAL HISTORY**

In May and June 2012, Plaintiff communicated with representatives of Defendants to challenge his termination and regain employment, but was unsuccessful in obtaining reinstatement. Id. ¶¶ 49-51.

On October 5, 2012, Plaintiff timely filed a complaint with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA Complaint") under the whistleblower provision of the ERA, 42 U.S.C. § 5851. Id. ¶ 52. Plaintiff alleged that the stated grounds for his discharge, i.e., his claustrophobia, was pretextual, and that, in fact, he was being discharged for speaking out about Roden's unsafe conduct. Id.

1  On April 25, 2013, Plaintiff filed suit in this Court, and thereafter filed a First
2  Amended Complaint ("FAC") against Defendants on May 16, 2013.  Dkt. 1, 11.  The FAC
3  alleges three claims:  (1) disability discrimination under the ADA; (2) disability
4  discrimination under FEHA; and (3) failure to engage in an interactive process as required
5  by the FEHA.  Though no ERA claim is alleged, the FAC states that Plaintiff "expressly
6  reserves the right to amend this complaint to seek relief from this court if, after October 5,
7  2013, no final decision had yet been made on his OSHA Complaint."  Id. ¶ 53.[2]
8  No action has been taken on Plaintiff's OSHA Complaint.  As such, Plaintiff now
9  seeks leave to file a Second Amended Complaint ("SAC") to add a claim under the ERA
10 and include certain new allegations.  Dkt. 40.  Defendants oppose the motion on the
11 grounds of undue prejudice, bad faith and the failure to meet and confer.  Dkt. 44.
12 Alternatively, Defendants request leave to conduct further discovery regarding Plaintiff's
13 new allegations.  The matter has been fully briefed and is ripe for adjudication.

## II.     LEGAL STANDARD

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has repeated counseled that Rule 15 "is to be applied with extreme liberality."  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).  "Four factors are commonly used to determine the propriety of a motion for leave to amend.  These are:  bad faith, undue delay, prejudice to the opposing party, and futility of amendment."  Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Of these factors, prejudice "carries the greatest weight."  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a

---

[2] The ERA prohibits discrimination against "whistleblowers" at commercial nuclear facilities regulated by the Nuclear Regulatory Commission.  42 U.S.C. § 5851(a).  An aggrieved employee may file a complaint with the Secretary of Labor ("Secretary").  Id. § 5851(b)(1).  If the Secretary has not issued a final decision within one year after the filing of an administrative complaint, the employee may file an action in federal district court.  Id. § 5851(b)(4).

presumption under Rule 15(a) in favor of granting leave to amend." Id.  The party opposing the amendment carries the burden of showing why leave to amend should not be granted.  DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987).  The decision to grant or deny a request for leave to amend rests in the discretion of the trial court.  See California v. Neville Chem. Co., 358 F.3d 661, 673 (9th Cir. 2004).

## III.   DISCUSSION

### A.   PREJUDICE

Defendants claim that they will be prejudiced if Plaintiff is allowed to allege a claim under the ERA because they took his deposition on August 29, 2013, and therefore, will not have a further opportunity to depose him on this new claim.  Opp'n at 4.  Though tacitly admitting that they knew of Plaintiff's intention to eventually pursue an ERA claim, Defendants assert that "there was no way for [them] to know what new allegations [Plaintiff] would bring with the SAC."  Id.

Defendants' claim of surprise and prejudice is unavailing.  Well before taking Plaintiff's deposition, Defendants were well aware of his plan to seek leave to amend if the Secretary had not ruled on his OSHA Complaint by October 5, 2013.  Defendants also knew of the factual basis of such claim, which was fully disclosed in the FAC.  Compare FAC ¶¶ 32-45 with SAC ¶¶ 32-44, 81-89.  Given this awareness, Defendants were certainly in a position to depose Plaintiff regarding those allegations—or, out of an abundance of caution, reserve time to continue his deposition at a later date once the pleadings had actually been amended.  Having elected neither option, Defendants cannot legitimately claim that they will be unduly prejudiced if the Court grants Plaintiff leave to amend to allege a claim under the ERA. Any prejudice from granting leave to amend is largely of Defendants' own making.[3]

---

[3] As will be discussed below, the Court will permit Defendants a limited opportunity to further depose Plaintiff regarding his new claim, which will ameliorate any prejudice resulting from Defendants having already having taken his deposition.

**B.    BAD FAITH**

Defendants next contend that leave to amend should be denied on the grounds that Plaintiff's proposed amendments are being made in bad faith.  In the context of a motion to amend under Rule 15, "bad faith" generally refers to efforts to amend the pleadings late in the litigation in order to obtain an unfair tactical advantage.  E.g. Bonin v. Calderon, 59 F.3d 815, 846 (9th Cir. 1995) (bad faith shown where petitioner sought leave to amend late in the litigation after suffering an adverse ruling); Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986) (amendment disallowed where the delay in amendment was a tactical choice brought specifically to avoid the possibility of an adverse summary judgment ruling).  In their motion, Defendants do not allege that Plaintiff is seeking leave to amend for tactical reasons.  Rather, they argue that Plaintiff should have alleged certain facts earlier and that some of the new allegations contradict his deposition testimony.  The Court discusses the challenged allegations below.

**1.    Paragraph 3**

Paragraph 3 of the proposed SAC includes an allegation that:  "When Plaintiff was sent to be fitted for a respirator, Plaintiff was required to fill out a questionnaire which asked, among other things, whether Plaintiff suffered from claustrophobia.  Plaintiff circled the box that said 'Yes.'"  SAC ¶ 3, Dkt. 41-1.  Defendants contend that Plaintiff should have alleged these facts in the FAC, and that his attempt to include them now is in bad faith because they have already deposed Plaintiff.  Opp'n at 5.  This contention lacks merit.

There is no evidence that Plaintiff intentionally withheld the facts alleged in Paragraph 3 of the SAC for any improper purpose.  Rather, the record shows that the new allegations are based on discovery obtained by Plaintiff in this case.  Under those circumstances, leave to amend is proper.  See Gross Belsky Alonso LLP v. Henry Edelson, No. C 08-4666 SBA, 2009 WL 1505284, *8 (N.D. Cal. May 27, 2009) ("The Ninth Circuit has held that discovery of new facts after a complaint was filed may warrant granting leave to amend") (citing Wittmayer v. United States, 118 F.2d 808, 809 (9th Cir. 1941)).  In any

event, the Court will permit Defendants to depose Plaintiff on this new allegation, which will ameliorate any issue of prejudice.

### 2. Paragraph 82

Paragraph 82 of the proposed SAC states as follows:

> One of Defendants' employees while Plaintiff was employed by Defendants at Humboldt Bay was Ironworker Edgar Roden. Roden, on multiple occasions, engaged in unsafe workplace practices while working at Humboldt Bay. Such unsafe practices by Roden were in violation of 42 U.S.C. Chapter 73 ("Development of Energy Sources") and/or the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011 et seq. Plaintiff on at least one occasion reported Roden's unsafe practice that Plaintiff had observed to Plaintiff's supervisor, LaBouef, in or about the latter part of March 2012, shortly before being terminated.

SAC ¶ 82. Defendants "request that, at a minimum, the Court strike these allegations from the SAC as being in bad faith because they were facts known to [Plaintiff] at the time he filed his Complaint and unduly delayed in amending his complaint to include them, and are being alleged in bad faith." Opp'n at 5. This argument also lacks merit.

Paragraph 82 is one of the paragraphs that comprise Plaintiff's new whistleblower claim under the ERA. By statute, Plaintiff could not bring his ERA claim in this proceeding until his OSHA Complaint had been pending for at least a year without a final decision having been rendered thereon. See 42 U.S.C. § 5851(b)(1). Defendants were on notice of this, as evidenced by Plaintiff's disclosures in the FAC and in the Joint Case Management Statement. Additionally, the FAC did, in fact, allege facts regarding Roden's unsafe workplace practices as well as LaBoeuf's awareness of the same. E.g., FAC ¶¶ 32-42. In view of the provisions of the ERA, and Plaintiff's full disclosure of his intentions to seek leave to amend, the Court rejects Defendants' assertion that Plaintiff unduly delayed or is acting in bad faith in seeking to add a claim for violation of the ERA, including Paragraph 82 of the proposed SAC.

//

//

### 3. Paragraph 83

Paragraph 83 of the proposed SAC alleges, in pertinent part, that:

> Defendants appeared to countenance Roden's unsafe workplace practices, and therefore Defendants had warned Plaintiff and other Defendants' employees not to speak out about Roden's unsafe workplace conduct. On information and belief, Defendants knew of Plaintiff's complaints about Roden, which were made publicly within Defendants' Trailer 35, where Defendants' management personnel had their offices, during work hours.

SAC ¶ 82. Defendants next contend that the allegations contained in Paragraph 83 of the SAC contradict Plaintiff's deposition testimony, and as such, his effort to allege such facts amounts to bad faith. The Court has reviewed the deposition testimony cited by Defendants and disagrees that it is contradictory.

During his deposition, Plaintiff testified that when he complained to LaBoeuf about Roden's unsafe work practices, LaBoeuf responded that he was "already aware of the situation; I'm on it" or words to that effect. McInerney Decl. Ex. 5 at 141:7-142:9. Defendants argue that this testimony directly contradicts Plaintiff's new claim that "Defendants appeared to countenance Roden's unsafe workplace practices." Defendants are mixing apples with oranges. The allegation at issue is directed at what *Defendants* "countenanced," as opposed to LaBoeuf's conduct in particular. Moreover, the fact that LaBoeuf stated that he was aware of the problem does not ipso facto mean that either he or Defendants did anything about it. On a motion for leave to amend, reasonable inferences are to be drawn in favor of the movant, not vice-versa. See Griggs v. Pace. Amer. Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999) (consideration of a motion to amend based on Foman factors "should generally be performed with all inferences in favor of granting the motion").

Defendants also dispute the veracity of Plaintiff's allegation that: "Defendants knew of Plaintiff's complaints about Roden, which were made publicly within Defendants' Trailer 35, where Defendants' management personnel had their offices, during work hours." SAC ¶ 83. According to Defendants, Plaintiff admitted during his deposition that

1  no managerial employees were present at the meeting organized by Trujillo during which
2  various employees, including Plaintiff, expressed their concerns regarding Roden.  Opp'n at
3  7 (citing McInerney Decl. Ex. 5 at 287:12-292:20).  However, Plaintiff did not testify that
4  no managers were present; rather, he stated that he could not recall whether any of them
5  were there.  McInerney Decl. Ex. 5 at 287:19-20.  In addition, Defendants overlook that the
6  pleadings allege that there were other meetings beyond the one discussed in the cited
7  deposition testimony where complaints regarding Roden were publicly expressed.  E.g.,
8  SAC ¶¶ 36-38.  Defendants' arguments are more appropriately raised on a dispositive
9  motion, not on a Rule 15(a) motion where the governing standard is one of "extreme
10 liberality."  See Eminence Capital, LLC, 316 F.3d at 1051.

### 4. Paragraphs 84 and 85

12  Defendants assert that Plaintiff is seeking to include additional factual allegations in
13 his SAC that are unrelated to his new, proposed claim under the ERA.  Opp'n at 6.  In
14 Paragraph 84, for instance, Plaintiff alleges that he was not offered or paid any severance
15 benefits at the time of his termination.  SAC ¶ 84.  Paragraph 85 alleges that Defendants
16 "breached the implied covenant of good faith and fair dealing in terminating the
17 employment of Plaintiff . . . ."  SAC ¶ 84.

18  Defendants contend that these allegations have no bearing on Plaintiff's proposed
19 ERA claim or any other existing claims, and serve no purpose other than to portray
20 Defendants in a negative light.  Opp'n at 6.  Plaintiff offers no argument to the contrary.  In
21 addition, the Court agrees that these particular allegations appear unnecessary to any of
22 Plaintiff's existing claims or proposed claim under the ERA. Though these particular
23 allegations do not warrant the complete denial of leave to amend, the Court will disallow
24 these particular allegations to be included in the SAC.

### C. MEET AND CONFER

26  Aside from the issues of prejudice and bad faith, Defendants contend that leave to
27 amend should be denied on the basis that Plaintiff failed meet and confer in good faith prior
28 to filing the instant motion, as required by the Court's Standing Orders.  Opp'n at 8.  In

1 response, Plaintiff accuses Defendants of failing to meaningfully participate in the meet and
2 confer process.  Reply at 4-5.  Upon reviewing the record presented, the Court finds that
3 neither side has acted in good faith.
4      On October 16, 2013, Plaintiff sent a letter to Defendants stating that since the
5 Secretary had not ruled on his administrative complaint by October 5, 2013, he was
6 planning on amending the pleadings to add a claim under the ERA—as he had previously
7 indicated in the FAC and Joint Case Management Statement.  McInerney Decl. Ex. 2.
8 Plaintiff included a proposed stipulation and order to authorize the filing of a SAC, and
9 requested that Defendants respond to his request within a week.  At Defendants' request,
10 Plaintiff sent a redlined version of the SAC (to highlight the changes) the same day for their
11 review.  Id.
12      On October 24, 2013, a day *after* the response deadline set by Plaintiff, Defendants
13 sent Plaintiff a letter stating their refusal to stipulate to the filing of the SAC on the grounds
14 that some of the new allegations were inconsistent with Plaintiff's deposition testimony.
15 Id. Ex. 4.  Defendants did not address Plaintiff's desire to add a claim under the ERA,
16 which is the focal point of the present motion.  Nor did Defendants claim, as they do now,
17 that they would be prejudiced by the amendment in light of the fact that Plaintiff had
18 already been deposed.  Instead, Defendants concluded their letter with a lengthy threat to
19 seek sanctions under Rule 11.  As for Plaintiff, he did not respond to Defendants' letter, and
20 instead, simply filed his proposed SAC a week later.
21      The obvious purpose of the Court's meet and confer requirement is to ensure that the
22 parties engage in a good faith, meaningful dialogue regarding disputed issues in effort to
23 first resolve the particular dispute without the need for judicial intervention.  Such a
24 process, when successful, obviates the need for unnecessary motion practice, which, in
25 turn, conserves both the Court's and the parties' resources.  In this case, both parties failed
26 to engage in a meaningful discussion regarding Plaintiff's proposed SAC.  Defendants
27 failed to timely respond to Plaintiff's request for a stipulation within the ample time
28 provided.  And while Defendants certainly had the right to take issue with certain of the

1 proposed, new allegations, they inexplicably never addressed Plaintiff's overarching desire
2 to amend the pleadings to add a claim under the ERA, as Plaintiff has long indicated that he
3 had planned to do.  While Plaintiff's frustration with Defendants' apparent gamesmanship
4 is understandable, he nonetheless should have attempted to respond to Defendants'
5 concerns rather than unilaterally filing his motion.  The parties are warned that further
6 transgressions of any order of this Court, including its Standing Orders, may result in the
7 imposition of sanctions against counsel and/or their respective clients.

### D. FURTHER DISCOVERY

As an alternative matter, Defendants request that, in the event the Court grants Plaintiff leave to amend, that they be allowed to depose Plaintiff for an additional five hours and to propound five additional interrogatories.[4]  Plaintiff counters that no additional time to depose him or to propound additional interrogatories should be allowed, since Defendants intentionally chose not to depose him on said claim even though they were well aware of his intention to pursue a claim under the ERA.

Neither of the parties' arguments is particularly compelling.  While Defendants no doubt would prefer not to invest time and resources in conducting discovery on claims that have yet to be pled, it certainly would have been prudent for them to, at a minimum, avoid utilizing the entire allotted seven hours to depose him and instead reserve time to depose Plaintiff at later date after it had become clear that Plaintiff was pursuing an ERA claim in this action.  At the same time, Plaintiff has neither claimed nor demonstrated that he will be prejudiced or unduly burdened by being subject to a further deposition for the limited purpose of addressing his new allegations.  Therefore, in the interests of justice, the Court will permit Defendants additional time to depose Plaintiff.  Although Defendants request five additional hours of deposition time, they have made no showing to justify affording

---

[4] As noted, absent a stipulation or court order, depositions are limited to "1 day of 7 hours."  Fed. R. Civ. P. 30(d)(1).  Rule 33(a)(1) similarly provides that, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."

them almost twice as much time as seven hour time limit presumptively permitted under Rule 30(d)(1).

Based on its review of the new allegations, the Court finds that an additional two hours of deposition time will suffice. No further interrogatories will be permitted, as Defendants will have ample opportunity to query Plaintiff regarding the factual basis of his ERA claim and additional allegations during his further deposition.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Leave to Amend is GRANTED IN PART and DENIED IN PART. Plaintiff is granted leave to amend to file his proposed SAC, except as to Paragraphs 84 and 85 therein. Plaintiff shall file his SAC consistent with this Order within two (2) calendar days of the date this Order is filed.

2. Defendants are granted leave to further depose Plaintiff, but only with respect to Plaintiff's claim under the ERA and any new factual allegations in the SAC. The further deposition shall be limited to two (2) hours. Defendants' counsel shall not depose Plaintiff on any issues beyond those that have been expressly authorized in this Order.

3. To ensure that any future meet and confer discussions are meaningful and productive, all such discussions must now culminate in verbal communication, either face-to-face or by telephone.

4. This Order terminates Docket 16.

IT IS SO ORDERED.

Dated: 2/4/14

*(signature)*
SAUNDRA BROWN ARMSTRONG
United States District Judge